**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHARON OTERO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PORT AUTHORITY OF NEW YORK AND NEW JERSEY *et al.*,<br><br>　　　　　Defendants. | Civil Action No. 19-12634 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendant Michael Fedorko's ("Fedorko") Motion to Dismiss Plaintiff Sharon Otero's ("Otero") Complaint. (ECF No. 39.) Otero opposed (ECF No. 40), and Fedorko replied (ECF No. 41). The Court has carefully considered the parties' submissions and decides this matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants in-part and denies in-part Fedorko's Motion to Dismiss.

**I.   BACKGROUND**[1]

This case involves a decades-long employment dispute with the Port Authority of New York and New Jersey (the "Port Authority"). (*See generally* Compl., ECF No. 1.) The Complaint alleges that Port Authority violated the Americans with Disabilities Act (the "Act") when it failed to promote Otero, a disabled police officer. Otero became disabled after she suffered respiratory

---

[1] The Court accepts as true and summarizes the facts alleged in the Amended Complaint. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

illnesses from responding to the September 11th terrorist attacks. (*Id.* ¶¶ 67-69.) Shortly after the attacks, Otero began working for Port Authority. (*Id.* ¶ 72.) During her time there, she took several sick days, induced by her respiratory illnesses. (*Id.* ¶ 91.)

Beginning in 2011, Otero started applying for various promotions. In applying, however, she faced discrimination and arbitrary changes in Port Authority's promotion policies. First, Otero applied for a Sergeant position in March 2011, but Port Authority denied that application. (*Id.* ¶¶ 81, 92.) Citing its seven-category promotion criteria, Port Authority denied Otero because she had too many sick days. (*Id.* ¶ 89.) At the time, Port Authority policy screened out candidates that "had 5 or more sick occasions or 13 or more days lost" in the twelve months before March 2010. (*Id.* ¶ 33.) Second, after reducing her number of sick days taken, Otero again applied for the same promotion, but Port Authority again denied her application. (*Id.* ¶¶ 94, 98.) The reason? The Complaint claims that Port Authority changed the sick-day policy—requiring that "the candidate have three or fewer 'sick absence occasions' in two of the last three years[] and eleven or fewer 'sick days' in two of the last three years" to be eligible to apply. (*Id.* ¶ 96.) Finally, in February 2013, Port Authority again changed course and informed Otero that she would not be eligible for any future promotions due to her absences. (*Id.* ¶ 99.)

Alongside other plaintiffs, Otero originally sued Port Authority, Fedorko, and others in the Newark vicinage before the Honorable Esther Salas, U.S.D.J. (the "Consolidated Action"). (*See generally* Compl., *Otero v. Port Auth.*, No. 14-1655 (D.N.J. Mar. 14, 2014), ECF No. 1.) After several rounds of amendments, on March 27, 2019, Judge Salas severed Otero's claim and provided Otero a 45-day window to refile her complaint before this Court. (Letter Order 3, *Otero v. Port Auth.*, No. 14-1655, ECF No. 163.) Otero missed that window and filed a complaint for the severed action on May 17, 2019. (ECF No. 1.) Regarding service of that complaint, Otero claims

that her counsel e-mailed the complaint to Port Authority's counsel in May 2019. (*See* Pl.'s Opp'n Br. 3-4, ECF No. 40.) Notably, Port Authority's counsel accepted service and represented Fedorko in the Consolidated Action. (*E.g.*, June 20, 2014 Correspondence from Facchini 1, *Otero v. Port Auth.*, No. 14-1655 ("On May 22, 2014, this office advised Plaintiff by letter that it would accept service on behalf of Defendant Fedorko in connection with this matter."), ECF No. 17; Notice of Appearance 1, *Otero v. Port Auth.*, No. 14-1655 (noting that Megan Lee appeared on behalf of Port Authority and Fedorko), ECF No. 170.) Nevertheless, the issue of service on Fedorko reared its head at a July 22, 2021 conference before the Honorable Douglas E. Arpert, U.S.M.J., where Judge Arpert ordered that Otero file proof of service. (ECF No. 37.) Instead, however, Otero's counsel served Fedorko on July 23, 2021. (ECF No. 38.) This Motion followed.

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2)[2] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations

---

[2] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III. DISCUSSION

Fedorko asserts that Otero's claim under the Act must fail because he was never served, the claim is untimely, and the Act does not recognize individual liability. The Court does not reach Fedorko's timeliness argument. It does, however, hold that the Act confines Otero's Complaint to prospective injunctive relief and that, to the extent that relief remains, Otero has timely served Fedorko.

To start, the Act authorizes lawsuits against employers, not individuals. *See Williams v. Pa. Hum. Rels. Comm'n*, 870 F.3d 294, 299 (3d Cir. 2017) ("[T]he ADA impose[s] liability on employers . . . ."); *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) ("[T]here appears to be no individual liability for damages under Title I of the ADA . . . ."). A narrow exception to this rule exists: "prospective relief against state officials acting in their official capacities may proceed under the statute." *Koslow*, 302 F.3d at 178. Applying these straightforward principles, the Court dismisses Otero's Complaint to the extent it seeks retrospective relief. To be sure, the Complaint seeks several forms of such relief, including a declaration that "the 2010-present Sergeants Examination process [is] null and void," a declaration that "all Officers who were promoted to Sergeant pursuant to the tainted exam be reduced to their former ranks," and compensatory and

4

punitive damages. (*See* Compl. 15-16; *Edelman v. Jordan*, 415 U.S. 651, 668 (1986) (noting that retrospective relief can be "measured in terms of monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials").) Because, however, the Complaint alleges some prospective relief (i.e., ongoing violations of the ADA and continuing to fail to promote Otero to Sergeant (Compl. 15-16)), the Court continues its analysis.

Next up is whether Otero properly served Fedorko. The parties do not dispute that Otero served Fedorko on July 23, 2021—more than two years after she filed the Complaint. (Pl.'s Opp'n Br. 2, ECF No. 40 ("Plaintiff . . . effectuate[d] service of process on Defendant Fedorko . . . on July 23, 2021."); Def.'s Moving Br. 3, ECF No. 39-1 ("Fedorko was served on July 23, 2021 . . . .") Two years is well outside the period for service prescribed by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4(m) (providing ninety days to serve a defendant after the complaint is filed). The only dispute therefore is whether Otero can show good cause for her failure of timely service.

Although the Court finds that Otero's counsel could have exercised more diligence ensuring that service was timely, it concludes that good cause exists. The touchstone of the good-cause inquiry is on "plaintiff's reasons for not complying with the time limit in the first place." *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995). To that end, courts assess whether plaintiffs moved for additional time to serve, whether plaintiffs' efforts to serve were "reasonable," and whether defendants would be prejudiced. *Id.* (citing *United States v. Nuttall*, 122 F.R.D. 163, 166-67 (D. Del. 1988)). Here, Otero's counsel attempted to serve Fedorko through Port Authority's counsel in May 2019. That attempt at service was reasonable because Port Authority's counsel accepted service and represented Fedorko in the Consolidated Action. Further, when Judge Arpert identified a problem with service, Otero's counsel responded by properly serving Fedorko. To be clear, the Court does not condone two-year delays in service

5

and the prejudice defendants may face from those delays. But the Court has little doubt that Fedorko knew about this litigation. That's especially so because Port Authority's counsel represented him in the Consolidated Action and because he knew Otero's severed action would be re-filed against him. *See* 4B Wright & Moore, Federal Practice and Procedure § 1137 (4th ed. 2021) ("The liberality of the Federal Rules of Civil Procedure allows minor defects in service to be overlooked, as long as the defendant has received actual notice of the lawsuit and has an opportunity to defend the action.").[3] Thus, the Court will allow Otero's suit against Fedorko to proceed for prospective injunctive relief only.[4]

## IV. CONCLUSION

The Court grants in-part and denies in-part Fedorko's Motion to Dismiss. It will issue an order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[3] The Court also notes that this case has been pending during the COVID-19 pandemic, that three different Magistrate Judges have presided over this case, and that different attorneys have represented Otero throughout the case.

[4] The Court does not reach Fedorko's statute-of-limitations argument, which is not fully briefed. In any event, statute-of-limitations affirmative defenses are best left for resolution at summary judgment. *See Gadra-Lord v. Vuksta*, No. 15-540, 2016 WL 1743092, at *6 (M.D. Pa. Apr. 7, 2016) (noting that affirmative defenses "often will rely upon consideration of facts outside of the pleadings themselves, which is usually a matter properly reserved for summary judgment").

6