## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SHARON OTERO,

    Plaintiff,

      v.

PORT AUTHORITY OF NEW YORK AND
NEW JERSEY, et al.,

    Defendants.

Civil Action No. 19-12634 (RK) (JTQ)

**OPINION**

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon a Motion for Summary Judgment by the Port Authority of New York and New Jersey ("Port Authority" or "Defendant"). (ECF No. 54.) Plaintiff Sharon Otero ("Officer Otero" or "Plaintiff") filed a brief in opposition, (ECF No. 60), and Defendant filed a reply brief, (ECF No. 62).[1] The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.

## I.     BACKGROUND

### A.  Plaintiff's Background and Employment at Port Authority

This action stems from Officer Otero's nearly twenty-year tenure serving as a Port Authority police officer. Plaintiff joined the Port Authority Policy Academy in September 2002.

---

[1] After the subject motion was fully briefed, this matter was transferred to the Undersigned on May 15, 2023. (*See* ECF No. 69.)

(*See* "SOF," ECF No. 54-2 ¶ 9.)[2] Plaintiff served at various posts around New York City, including the Holland Tunnel, the LaGuardia Airport, and the World Trade Center. (*Id.* ¶ 10.) In April 2021, Plaintiff retired from the Port Authority Police Department. (SOF ¶ 10; *see also* "Pl. Dep. Tr.," ECF No. 61-2 at 31:11–16.) Plaintiff, at her deposition, testified that she sought to retire before the age of 50 and for health reasons. (Pl. Dep. Tr. 31:17–20.) Plaintiff did not claim constructive discharge or that her voluntarily decision to retire was premised on any aspect of discrimination.

Prior to her employment with Port Authority, Plaintiff served as a police officer with the New York Police Department ("NYPD") from July 1999 to September 2002. (SOF ¶ 11.) During Plaintiff's time at the NYPD, the September 11, 2001 terrorist attacks occurred, and Plaintiff was one of the heroic first-responders who helped both in the immediate evacuation and the cleanup of the World Trade Center. (*Id.* ¶ 12; *see also* ECF No. 54-22, Ex. R at *5.) As a result of her work at the World Trade Center, Plaintiff developed chronic sinus issues and gastroesophageal reflux disease ("GERD"), as well as upper respiratory issues. (Pl. Dep. Tr. at 155:20–156:14.) These symptoms—which have continued until the present—materialize about three to four times per year, require Plaintiff to see a doctor, and take approximately one to two weeks off of work. (*Id.* at 159:15–160:3; 161:15–19.)

### B.  2010–2012 Promotions

In March 2010, Port Authority announced it would be seeking officer applicants who sought to considered for a promotion to Sergeant. (SOF ¶ 13.) To be eligible for the promotion, an officer had to pass a written examination, at which point they would be added to what is referred to as the "Horizontal Roster," or the list of eligible officers. (*Id.* ¶¶ 16–17.) In April 2010, the

---

[2] The Court notes that this Statement of Facts, provided by Defendant, at times contains duplicative numbering. The Court therefore refers to the facts as numbered in Plaintiff's response to Defendant's Statement of Facts, (ECF No. 68-1), which does not contain any duplicates.

written examination was administered, and thereafter in March 2011, the Horizontal Roster was created which included 465 officers. (*Id.* ¶ 17.) Once the Horizontal Roster was created, Port Authority, in June 2011 and February 2012, chose at random 60 and 70 officers, respectively, to proceed in the promotional process. (*Id.* ¶¶ 19–20.) These randomly selected candidates then would participate in a Qualifications Review Meeting ("QRM") with members of Port Authority's Human Resources and Public Safety Departments. (*Id.* ¶ 22.) The QRM interview would consist "of behavioral and situational questions designed to determine [a candidate's] qualifications relative to the job." (*Id.* ¶ 23.) The candidate would then be evaluated for promotion based on a number of factors by a Promotions Review Board, consisting of a Public Safety Officer, a Human Resources Employee, and a Senior Line Department Manager. (*Id.* ¶ 24.) A candidate was appraised for their performance in seven categories: (1) experience, (2) promotional appraisal, (3) QRM, (4) attendance record, (5) discipline history, (6) civilian complaints, and (7) Internal Affairs investigations. (*Id.*) These factors would form the basis for the Promotions Review Board's recommendation, after which the candidate would receive a score of "Highly Recommended," "Recommended," or "Not Recommended" for promotion. (*Id.*)

For purposes of the above category four, the candidate's attendance record was assessed over the prior three-year period. (*See* ECF No. 54-11, Ex. G at *2.) A candidate was only eligible for promotion if such candidate had "3 or fewer sick absence occasions and 11 or fewer sick days in 2 of the last 3 years." (*Id.*)[3] Absences related to injury on duty, maternity leave, or hospitalization were excluded from "sick leave." (*Id.*)

In November 2012, Port Authority again considered candidates from the Horizontal Roster for promotion. (SOF ¶ 26.) Port Authority screened candidates for attendance based on the same

_____

[3] The parties do not elaborate on the differences between sick absences and sick days.

criteria described above and for the three-year period prior to November 2012, and if a candidate did not meet the attendance threshold, the candidate was not considered for promotion. (*Id.* ¶¶ 27–28.)

In June 2011, Officer Otero participated in the promotional process and sought to be considered for the role of Sergeant. (*Id.* ¶ 31.) She took and passed the written examination, which resulted in her being added to the Horizontal Roster. (*Id.*) Officer Otero was then randomly selected to continue on in the promotional process, which included a QRM. (*Id.* ¶ 33.) On August 10, 2011, following the QRM, Plaintiff received a letter from Michael Ford, a member of the Port Authority Human Resources Department, with her ratings on the various categories applicable to the promotional process, as well as feedback on her QRM and other ways to improve her candidacy. (ECF No. 54-14, Ex. J at *2.) Ford explained that Plaintiff received four "Outstanding" ratings, but an "Unacceptable" in the "Attendance Category" and a "Needs Development" based on her QRM. (ECF No. 54-14, Ex. J at *2.) As such, Plaintiff was not recommended for a promotion. (*Id.*)

In February 2012, Plaintiff was not among the randomly selected officers from the Horizontal Roster to be considered for a promotion. (SOF ¶ 35.) With respect to the November 2012 promotional process, Plaintiff was screened out due to failing to meet the attendance requirement. (*Id.* ¶¶ 36–37.)

**C. 2015 Promotions**

In March 2015, Port Authority again announced that it would consider officers for a promotion to Sergeant. (*Id.* ¶ 40.) To be added to a new Horizontal Roster, a candidate had to take a written examination. (*Id.* ¶¶ 40, 42.) To sit for the test, a candidate was required to have five years of experience. (*Id.*) Once on the Horizontal Roster, the officer was screened to ensure they

met certain requirements, including attendance. (*Id.* ¶ 45.) Plaintiff was placed on the Horizontal

Roster. (*See* ECF No. 54-19, Ex. O.) However, in September 2015, Port Authority alerted Plaintiff

that she did not meet the attendance requirement, and therefore was not considered for a promotion.

(*Id.*; SOF ¶ 47.) Plaintiff, on her own volition, did not apply to participate in the 2018 promotional

process. (Pl. Dep. Tr. at 148:6–15.) As stated, Plaintiff retired from the Port Authority Police Force

in April 2021. (SOF ¶ 10.)

### D. Plaintiff's Medical Conditions

During her tenure at Port Authority, Plaintiff did not tell her employer that she was

disabled, nor did she request an accommodation for a disability:

> Q: Did you ever tell the Port Authority that you had a disability? A:
> The exact word disability, no. But I said I was involved in 9/11. . . .
>
> Q: [] I'm asking if you ever went to OMS or anyone at the Port
> Authority and said, 'I am disabled.'?"
> A: No.
>
> Q: Did you ever request any kind of accommodation from work?
> A: No.
>
> Q: Did you need an accommodation because of your disability? A:
> No.

(Pl. Dep. Tr. at 175:14–176:25; SOF ¶ 48 (spacing added).) When Plaintiff was absent at various

points, she received sick pay. (SOF ¶ 49.) As Plaintiff's injuries related to the World Trade Center

evacuation and recovery and occurred prior to her employment at Port Authority, Plaintiff was not

considered injured on duty for purposes of and as defined by Port Authority. (SOF ¶ 50; Pl. Dep.

Tr. at 62:4–10; *see also* ECF No. 61-3.)

On December 9, 2015, Plaintiff received a letter from the World Trade Center Health

Program, which certified her GERD and Upper Respiratory Disease as conditions covered for

payment by the program. (*See* ECF No. 52-20, Ex. P.) Plaintiff provided this letter to Port Authority in January 2016. (SOF ¶ 52.)

In 2018, then Governor Andrew Cuomo issued a new policy, which Port Authority adopted, that retroactively, beginning in 2017 and extending to the future, counted any injury which occurred on duty with the NYPD as a Port Authority injury on duty. (Pl. Dep. Tr. at 62:18– 63:10.)

### E.  EEOC Complaint and Lawsuit

On October 15, 2014, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). (ECF No. 54-22, Ex. R.)[4] On May 17, 2019, Plaintiff filed the subject one-count lawsuit, alleging that Defendant violated the ADA. (*See generally*, "Compl.," ECF No. 1.)[5] Following the close of discovery, Defendant moved for summary judgment on July 8, 2022. (ECF No. 54.) Defendant filed a brief supporting its Motion, ("Def. MSJ," ECF No. 54-1), Plaintiff filed a brief in opposition, (Pl. Opp'n," ECF No. 60), and Defendant filed a reply brief, ("Reply," ECF No. 62). In support of its Motion, Defendant also filed a Statement of Facts. (SOF, ECF No. 54-2.) Plaintiff filed a Response to Defendant's Statement of Facts. ("Pl. SOF Response", ECF No. 68-1.)[6]

---

[4] The Court notes that the parties did not provide the Court with any notice or response Plaintiff received from the EEOC.

[5] Plaintiff originally filed suit, along with two other plaintiffs, in 2014, alleging, *inter alia*, violations of 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2. (*See* No. 14-1655, ECF No. 1.) That case was consolidated with other actions by former police officers. (*See* ECF No. 1, Ex. A.) As such, on March 27, 2019, the Honorable Esther Salas, U.S.D.J., severed Plaintiff's ADA claim and allowed it to proceed in a separate action, which became the case at bar. (*Id.*)

[6] Plaintiff originally failed to file a response to Defendant's Statement of Facts with its opposition brief, in violation of Local Civil Rule 56.1(a). The Honorable Georgette Castner, U.S.D.J., permitted Plaintiff to file a belated response. (ECF No. 67.) Plaintiff chose not to furnish a supplemental statement of facts.

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that the Court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "view[] the facts in the light most favorable to the party against whom summary judgment was entered." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). A "material fact" is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine dispute" about a fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F. 3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The party moving for summary judgment has the initial burden of establishing its right to summary judgment. *See Celotex Corp.*, 477 U.S. at 323. To show that a material fact is not genuinely disputed, it "must . . . cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The moving party may also meet its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Once the movant meets its threshold burden under Rule 56, the non-moving party

must present evidence to establish a genuine issue as to a material fact. *See Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the non-movant "must do more than simply show that there is some metaphysical doubt as to material facts.").

III.   **DISCUSSION**

Defendant moves for summary judgment on Plaintiff's ADA claim, the sole claim in the complaint. (*See generally*, Def. Br.) First, Defendant contends that Plaintiff failed to exhaust her administrative remedies before the Equal Employment Opportunity Commission ("EEOC"). Second, Defendant argues that Plaintiff was not subject to discrimination, and legitimate non-discriminatory reasons exist for Port Authority's decision not to promote Plaintiff. The Court first addresses the merits of Plaintiff's ADA claim.[7]

A.   **ADA**

Plaintiff brings suit against Defendant for violation of the ADA. (*See generally*, Compl.). Specifically, Plaintiff contends that Defendant "developed and implemented policies that intentionally, knowingly, recklessly and/or negligently discriminated against Plaintiff based on her disability and/or handicap" and "[a]s a result of Plaintiff's disability and/or handicap, which was developed as a result of Plaintiff's work-related duties on and after 9/11, Plaintiff has been denied a promotion to Sergeant." (Compl. ¶¶ 113–14.)

The ADA serves to protect employees from unlawful discrimination in the workplace. The ADA was enacted in 1990 "to remedy widespread discrimination against disabled individuals." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001). Title I of the ADA states that "[n]o covered

---

[7] As the Court grants Defendant summary judgment on the merits of Plaintiff's ADA claim, the Court need not address Defendant's additional argument that Plaintiff failed to exhaust her administrative remedies.

entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "covered entity" under the ADA includes an "employer," which is "a person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such person . . . ." 42 U.S.C. § 12111(2) & (5)(A). Title IV of the ADA prohibits retaliation for exercising the rights guaranteed under Title I of the ADA. It provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

ADA claims are analyzed under the three-step burden-shifting test laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007). Under this test, a plaintiff must "carry the initial burden under the statute of establishing a *prima facie* case of [unlawful] discrimination." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (quoting *McDonnell Douglas*, 411 U.S. at 802). To demonstrate a *prima facie* case for disability discrimination, a plaintiff must show "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998) (citing *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996)).

If the plaintiff establishes a *prima facie* case, "the burden of *production* shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Fuentes*, 32 F.3d at 763 (quoting *McDonnell Douglas*, 411 U.S. at 802) (emphasis in original).

The "employer need not prove, however, that the proffered reasons actually motivate[] the [employment] decision." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 465 (3d Cir. 2005) (quoting *Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000)) (brackets in original). This is because "throughout this burden-shifting paradigm, the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Fuentes*, 32 F.3d at 763. The Third Circuit has described the employer's responsibility in the second-prong as a "light burden." *Id.*

If the employer proffers "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision," the burden shifts back to the plaintiff to demonstrate "by a preponderance of the evidence that the employer's explanation is pretextual." *Id.* The plaintiff "bears the final burden to demonstrate . . . through evidence that the [employer's] provided rationale is false or that the real reason for the adverse action was discriminatory or retaliatory animus." *Valente v. PNC Bank*, No. 20-710, 2023 WL 5608943, at *4 (D.N.J. Aug. 30, 2023).

A plaintiff may demonstrate pretext in two ways. *See Klimek v. United Steel Workers Loc. 397*, 618 F. App'x 77, 80 (3d Cir. 2015). The plaintiff "must present some evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Id.* (quoting *Fuentes*, 32 F.3d at 764). As the Third Circuit has explained:

> To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered

> legitimate reasons for its actions that a reasonable factfinder could
> rationally find them unworthy of credence.

*Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1108–09 (3d Cir. 1997) (quoting *Fuentes*, 32 F.3d at 765). Courts are not a "'a super-personnel department' tasked with correcting unduly harsh employment actions." *Klimek*, 618 F. App'x at 80 (quoting *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir.1995); *see also Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 (3d Cir. 2006) ("The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination." (cleaned up)).

### 1.    Step One: Plaintiff's *Prima Facie* Burden

The Court first addresses Plaintiff's *prima facie* discrimination claim. To briefly summarize the parties' respective arguments, Defendant contends that Plaintiff cannot establish her *prima facie* burden because she failed to alert Port Authority to the fact that she was disabled. (Def. MSJ at 15–16.) As such, Defendant could not have discriminated against her due to its lack of knowledge regarding her alleged disability. (*Id.*) Defendant contends that, other than a coded notation, such as "Sick Leave" indicating that Plaintiff was absent, no explanation was given for the absence. (*Id.* at 18.) Therefore, Defendant was not aware Plaintiff's absences were due to a purported disability, and Plaintiff was screened out of the promotional process due to her unspecified absences. (*Id.*)

In response, Plaintiff contends that there is a clear issue of material fact as to whether Defendant was aware of Plaintiff's disability. (Pl. Opp'n at 12.) Plaintiff argues that Defendant was aware that Plaintiff required extended medical leaves, and she received memoranda which noted the number of sick absences Plaintiff incurred. (*Id.* at 11.) Plaintiff also avers she met with Port Authority doctors both after first joining Port Authority and upon her returns from sick leave. (*Id.*) Therefore, based on Plaintiff's absences and alleged conversations with Port Authority

doctors regarding her medical conditions, Plaintiff contends that there is a genuine issue of material fact as to whether Port Authority knew of Plaintiff's disability. (*Id.* at 12.)

As mentioned above, Plaintiff may establish a *prima facie* case under the ADA by showing that " (1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul*, 134 F.3d at 580 (citing *Shiring*, 90 F.3d at 831. "In order to prevail under the ADA, a plaintiff must first establish a *prima facie* case by producing evidence sufficient to support an inference of discrimination." *Equal Emp. Opportunity Comm'n v. Hussey Copper Ltd.*, 696 F. Supp. 2d 505, 516 (W.D. Pa. 2010). To meet her burden at Step One, a plaintiff need only overcome a "low bar." *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006) (citing *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 523 (3d Cir. 1992)).

Plaintiff's *prima facie* case fails for two reasons—Plaintiff fails to demonstrate that she was disabled within the meaning of the ADA, and Plaintiff fails to raise an inference of discrimination related to Port Authority's decision not to promote her.

A plaintiff may raise an inference of discrimination in two ways, by "(1) introduc[ing] evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances); or (2) rely[ing] on circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action." *Greene v. Virgin Islands Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014).

Plaintiff fails to point to any similarly situated employee. "[E]mployees are similarly situated when their conduct on the job—or misconduct—is similar in nature." *Oakley v. Orthopaedic Assocs. of Allentown, Ltd.*, 742 F. Supp. 2d 601, 608 (E.D. Pa. 2010); *Wilcher v. Postmaster Gen.,* 441 F. App'x. 879, 881–82 (3d Cir. 2011) (explaining the "similarly situated" analysis "takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in"). In the case at bar, aside from a passing conjectural reference to employees Plaintiff believed were promoted over her, (*see e.g.*, Pl. Dep. Tr. at 96:11–15), which Plaintiff surmises were due to "cronyism and nepotism," (*id.* at 97:8–11). Plaintiff proffers no evidence that these officers were similarly situated to her. There is no evidence that these officers had similar roles, attendance records, or performances in the QRM.

Plaintiff also fails to demonstrate any circumstantial evidence in the record that gives rise to an inference that Plaintiff's disability was the cause of Plaintiff's lack of promotion. Plaintiff does not point to comments or remarks by any supervisors, or any other evidence that could demonstrate Port Authority's decision occurred "as a result of discrimination." *Gaul*, 134 F.3d at 580. Moreover, Plaintiff provides no evidence, nor even raises the argument, that Defendant adopted the attendance requirement in its promotional policy in order to undermine or single out officers with disabilities. As such, Plaintiff does not raise an inference of discrimination.

More importantly, Plaintiff has not established a genuine issue of material fact that Port Authority, and those in charge of promotional decisions, knew Plaintiff was disabled. In her opposition brief, Plaintiff states she told Port Authority physicians of her conditions when she first joined Port Authority in 2003 and received sick absence counseling at various points throughout her tenure. (*See* Pl. Opp'n at 11.) However, these absences were considered sick leave and did not indictate either an injury on duty or that Plaintiff was out on disability leave. (*See* ECF No. 61-3.)

Moreover, Plaintiff's lingering and chronic medical conditions which prompted repeated absences, by themselves, do not put the Port Authority on notice that Plaintiff was legally disabled as defined by the ADA, 42 U.S.C. § 12101 *et seq.*

The counseling memoranda on which Plaintiff relies simply note the number of days Plaintiff was absent and warn that Plaintiff's pay may be cut due to future prolonged absences. (*Id.*) In addition, Plaintiff fails in her burden, aside from a reference to a presumably confidential conversation subject to a doctor and patient relationship in which she claims to have alerted Port Authority doctors that she was "involved in 9/11," and somehow extrapolating same as tantamount to imputing knowledge to Port Authority, let alone to those at Port Authority involved in the promotional decision, that she had a legal disability. (*See* Pl. Dep. Tr. at 205:16–22.)

Plaintiff admits that she did not tell Port Authority that she had a disability, and only passed along the certification dated December 9, 2015 from the World Trade Center Health Program in January 2016. (Pl. Dep. Tr. at 175:14–176:7; *see also* ECF No. 54-20, Ex. P.) This one-page letter, sent by an organization which does not appear to be an arm of the Port Authority, certified Plaintiff's GERD and Upper Respiratory Disease as "covered for treatment benefits . . . for medically necessary treatment(s)." (*See* ECF No. 54-20, Ex. P.)[8] It is not tantamount to a declaration of a disability under the ADA as Plaintiff claimed in her deposition. (*See* Pl. Dep. Tr. at 190:15–19 ("Q: Telling someone your condition is not the same thing as being disabled, would you agree with that? A: Yes, until I was certified, yes.").)

Plaintiff received notices from the Port Authority that she was not selected for a promotion on August 10, 2011, (ECF No. 54-14, Ex. J), February 4, 2013, (ECF No. 54-15, Ex. K), and

---

[8] Plaintiff appears to conflate this certification as a de facto notice of a disability under the ADA without providing any evidence in the record or support for such assertion. As explained herein, the Court need not resolve this issue.

September 29, 2015, (ECF No. 54-19, Ex. O). However, Plaintiff admits that she gave notice to Port Authority of her World Trade Center Health Program certified medical conditions in January 2016, (Pl. Dep. Tr. at 175:14–176:7), well after she was notified that she was not selected for promotion. Assuming *arguendo* that said certification constitutes de facto proof of disability, this supposed notice was admittedly provided to Port Authority several months after her last denial for promotion. In addition, Plaintiff was not selected for promotion well before Governor Cuomo's 2018 change in policy applied Plaintiff's duty injuries from the NYPD to Port Authority, retroactive to January 1, 2017. (*See id.* at 213:8–21.)

Thus, Plaintiff has not established that Port Authority knew of her disability. *See Jones v. United Parcel Serv.*, 214 F.3d 402, 406 (3d Cir. 2000) ("It is, of course, an axiom of any ADA claim that the plaintiff be disabled and that the employer be aware of the disability."); *Rinehimer v. Cemcolift*, Inc., 292 F.3d 375, 380 (3d Cir. 2002) ("[T]o establish discrimination because of a disability, an employer must know of the disability.").

Even if Plaintiff established that someone or unidentified personnel at Port Authority knew of her claimed disability, there is no evidence in the record that those involved in the Promotion Review Board or those that drafted the attendance requirement knew about Plaintiff's purported disability. *See Grisso-Leahey v. Centers Health Care*, No. 21-04433, 2022 WL 18425527, at *6 (D.N.J. Dec. 30, 2022) ("It is axiomatic that an adverse employment decision cannot have been based on discriminatory animus if the decision-maker had no knowledge of the alleged disability." (quoting *Glass v. Armstrong Utilities*, No. 13-1173, 2014 WL 7015966, * 7 (W.D. Pa. Dec. 11, 2014))).

Plaintiff provides no support, beyond mere conjecture, that Port Authority denied her a promotion based on her disability. *See Williams v. Rowan Univ.*, No. 10-6542, 2014 WL 7011162,

at *15 (D.N.J. Dec. 11, 2014) ("An inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment" (quoting *Johnson v. Multi–Solutions, Inc.,* 493 F. App'x 289, 292 (3d Cir. June 28, 2012))); *Skoorka v. Kean Univ.,* No. 16-3842, 2018 WL 3122331, at *14 (D.N.J. June 26, 2018) (finding no inference of discrimination where Plaintiff "point[ed] to no other evidence—not even a stray derogatory remark" aside from subjective belief that actions were grounded in discrimination). Thus, Plaintiff fails to establish her *prima facie* burden of disability discrimination. *See Etheridge v. Novo Nordisk Inc.,* No. 19-13676, 2022 WL 1689910, at *9 (D.N.J. May 26, 2022) (holding Plaintiff failed to establish *prima facie* burden where plaintiff only provided conclusory allegations of discrimination).

### 2.    Step Two: Defendant's Nondiscriminatory Justifications

Even though the Court concludes that Plaintiff has failed in establishing a *prima facie* showing of disability discrimination, the Court nonetheless will evaluate the second step of the *McDonnell Douglas* burden-shifting test. Under the second step of the burden-shifting test, Defendant must meet a "relatively light burden" of setting forth a "nondiscriminatory reason for the unfavorable employment decision." *Fuentes,* 32 F.3d at 763. To explain their decision not to promote Plaintiff, Defendant points to Plaintiff's poor interview performance and the application of a neutral promotional policy as the legitimate reasons Plaintiff was not promoted. (*See* Defs. MSJ at 19–22.) On August 10, 2011, following her interview as part of the 2011 promotional process, Plaintiff received a letter from Ford with feedback regarding her ratings from the Review Board. (ECF No. 54-14, Ex. J at *2.) This included comments based on her QRM, at which Plaintiff was asked "a series of behavioral and situational questions designed to determine [her] qualifications relative to the job." (*See* SOF ¶ 23.) As Ford explained, Plaintiff received four "Outstanding" ratings, but an "Unacceptable" in the "Attendance Category" and a "Needs

16

Development" based on her responses in the QRM. (ECF No. 54-14, Ex. J at *2.) As such, Plaintiff

was not recommended for a promotion. (*Id.*) Regarding the QRM, Plaintiff was given feedback on

how to improve:

> Respond to questions in a manner that clearly and concisely
> demonstrate your qualifications. Organize your thoughts prior to
> responding to each question. Think through and thoroughly address
> <u>all</u> of the aspect of the question. Communicate in a manner that
> clearly communicates the message you intend to convey. Expand
> your experience, knowledge and/or skill level in areas relevant to
> the job of Police Sergeant.

(*Id.* at *3 (emphasis in original).) Further, in light of her "more then 11 sick days in the three-year

period considered for promotion," Plaintiff received the unacceptable rating. (ECF No. 54-3 ¶ 42.)

Plaintiff was advised to "[i]mprove [her] attendance record by minimizing the number of

occasions/days you go out sick and/or avoid sick patterns around holidays, weekends, or peak

vacation periods or other patterns for using sick time." (ECF No. 54-14, Ex. J at *3.) In February

2013 and September 2015, Plaintiff was deemed ineligible for promotion based on failing to meet

the attendance requirement in Port Authority's promotional process. (*See* ECF No. 54-15, Ex. K;

ECF No. 54-19, Ex. O.)

     Here, Defendant has set forth sufficient evidence for a reasonable factfinder to conclude

that Plaintiff's poor interview performance and Defendant's application of a neutral attendance

policy were legitimate, nondiscriminatory reasons for Port Authority's decision not to promote

Plaintiff. In the Third Circuit, "[p]oor performance in an interview is a well-recognized legitimate

nondiscriminatory reason for failure to hire or promote." *Carr v. New Jersey*, No. 09-913, 2012

WL 3757028, at *3 (D.N.J. Aug. 28, 2012), *aff'd*, 534 F. App'x 149 (3d Cir. 2013) (citing *Green

v. Postmaster General of U.S.*, 437 F. App'x 174, 176–77 (3d Cir. 2011)); *McCann v. Astrue*, 293

F. App'x 848, 851 (3d Cir. 2008) (same); *Thompson v. Bridgeton Bd. of Educ.*, 9 F. Supp. 3d 446, 455 (D.N.J. 2014), *aff'd*, 613 F. App'x 105 (3d Cir. 2015).

Moreover, application of a neutral policy "plainly satisfie[s] [an employer's] obligation under *McDonnell Douglas* to provide a legitimate, nondiscriminatory reason" for an adverse employment action. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003); *Munoz v. Nutrisystem, Inc.*, No. 13-4416, 2014 WL 3765498, at *5 (E.D. Pa. July 30, 2014) ("violation of an employer's attendance policy to constitute a legitimate and non-discriminatory basis for termination"); *Zielinski v. Pulte Grp., Inc.*, No. 10-6761, 2011 WL 2937427, at *4 (E.D. Pa. July 21, 2011) ("implementation of company policy constitutes a legitimate, nondiscriminatory reason for firing her"); *Russell v. Aid to Developmentally Disabled, Inc.*, 753 F. App'x 9, 14 (2d Cir. 2018) ("Applying [a] neutral attendance policy is 'a neutral reason for the complained of action.'" (quoting *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014))). Therefore, assuming *arguendo* that Plaintiff established her *prima facie* burden, Defendant has offered a nondiscriminatory rationale for her lack of promotion at Step Two.

### 3.      Step Three: Pretext

Because Defendant satisfied the second prong of *McDonnell Douglas*, the burden shifts back to Plaintiff to "show by a preponderance of the evidence that the employer's explanation is pretextual." *Fuentes*, 32 F.3d at 763. As noted above, Plaintiff must either point to evidence from which the factfinder may infer discrimination or establish "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered legitimate reason for termination. *Keller*, 130 F.3d at 1108–09, 1111; *see Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 66 (3d Cir. 1996) (the plaintiff must "demonstrate that the employer's stated

reasons were not its true reasons but were a pretext for discrimination" (quoting *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995)).

Plaintiff contends that "even if the jury believes that Plaintiff's performance at the QRM was the motivating factor in her being passed for a promotion in August 2011, Plaintiff can still prove her case as a result of the attendance requirement in the subsequent promotion announcements that precluded her from consideration." (Pl. Opp'n at 12–13.) Plaintiff contends that she could not meet the "stringent attendance requirement" applicable in Port Authority's promotional process because of "her chronic medical disabilities." (*Id.* at 12.) Further, Plaintiff contends that there were no exceptions for officers with disabilities, and thus, despite Port Authority's alleged neutral policy, it affected officers with disabilities, such as Plaintiff, who were forced to take lengthy absences and therefore could not qualify for a promotion. (*Id.* at 13.)

Plaintiff fails to meet her burden at Step Three to show such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions," *Fuentes*, 32 F.3d at 765, such that a reasonable jury could reject Port Authority's nondiscriminatory basis for Plaintiff's termination. Plaintiff does not attempt to identify any bases for a jury to reject Defendant's reasons for not promoting her or any weaknesses in Defendant's proffered justifications.

In her deposition, Plaintiff testified that she believed Port Authority should have exempted her from the attendance requirement in the promotional policy. (Pl. Dep. Tr. at 204:3–17.) While Plaintiff curiously does not allege a failure to accommodate claim in her complaint, Plaintiff, in essence, complains about a lack of accommodation yet admits she never requested an accommodation. (*Id.* at 176:20–25.) As such, to the extent Plaintiff seeks to assert a failure to accommodate claim, this claim would also fail, as Plaintiff never requested an accommodation.

*See Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 247 (3d Cir. 2006) (affirming dismissal of failure to accommodate claim where plaintiff failed to request an accommodation).

Plaintiff does not contend, nor is there any evidence in the record, that undermine Port Authority's proffered reasons. She argues that Port Authority should have treated her absences as disability because "[t]o me, it was an [injury on duty] regardless that Port Authority didn't recognize it," (Pl. Dep. Tr. at 152:3–15), and the attendance policy should not have applied to her, even though she agreed she never told Port Authority she was disabled, (*id.* at 204:3–17).

Plaintiff admits she did not alert Port Authority of her disability upon entering her employment. (*See id.* at 204:23–205:6 ("Q: . . . When you first started to work for the Port Authority, which is what year? A: September 27, 2002. Q: Did you inform them of your condition as it related to the injuries sustained at the World Trade Center on 9/11? A: No.").) Nor did Plaintiff explain in her QRM that her sick absences were related to her purported disability:

> Q: With respect to your illness or your IODs, did any of the
> individuals at the -- the QRM is it?
> A: Yes.
>
> Q: Anyone ever ask you about them?
> A: They may have. I'm not sure. But I did tell them in my history
> that I was prior NYPD and I was involved in 9/11.
>
> Q: And did you indicate to them that you had absences related to
> 9/11?
> A: I don't recall.

(*See id.* at 208:9–19 (spacing added).)

The undisputed evidence in the record makes clear that Plaintiff was denied a promotion in August 2011, February 2013, and September 2015, (*see* ECF Nos. 54-14, 54-15, and 54-19)— all of which occurred before Plaintiff disclosed to Port Authority that the World Trade Center Health Program had certified her medical conditions—and before Governor Cuomo retroactively

applied her NYPD injuries on duty to the Port Authority. Plaintiff admits she did not apply for a promotion in 2018, (*See* Pl. Dep. Tr. at 148:12–13), and thus Plaintiff failed to avail herself of retroactive imputation of her injuries on duty from NYPD to Port Authority. Had she applied for promotion in 2018, Plaintiff may have been able to achieve a different result.

That Plaintiff believed she should have been exempt from the attendance requirement or given injury on duty leave—which Port Authority exempted from the attendance requirements— does not establish that the attendance requirement in Port Authority's policy was pretextual. Moreover, Plaintiff presents no arguments that Port Authority adopted the attendance requirement with discriminatory intent or to with the goal to negatively impact officers with a disability. As discussed above, application of a neutral policy is a nondiscriminatory reason for an adverse employment action. *Raytheon Co*, 540 U.S. at 53. Plaintiff's acknowledgement that she never disclosed her now claimed disability mandates summary judgment here.

In her deposition, Plaintiff testified that she believed that Port Authority did not randomly select individuals to advance to the QRM. (Pl. Dep. at 48:10–16.) In her view, Port Authority "showed favoritism." (*Id.* at 49:23–50:4; *id.* at 52:17–21 ("So it was constantly being manipulated to, I guess, get the people they wanted to select.").) Plaintiff also contends that "cronyism" and "nepotism" impact Port Authority's promotional decisions, as officers who taught at the police academy received promotions over those who did not. (*Id.* at 95:8–97:11.) However, Plaintiff admits she does not know their qualifications or records, how they performed in their jobs or how they interviewed. (*Id.* at 100:12–102:25.) Not only does this alleged favoritism or cronyism fail to establish pretext as to disability related animus, Plaintiff again advances mere conjecture in an attempt to raise a genuine issue of material fact.

Plaintiff's subjective surmise cannot create a genuine issue of material fact to survive summary judgment. *See Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 414 (3d Cir. 1999) (holding that "allegations in [plaintiff's] affidavit which he predicates on nothing more than his beliefs without having actual knowledge of them" failed to establish pretext); *Williams*, 2014 WL 7011162, at *15 ("An inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." (quoting *Johnson v. Multi–Solutions, Inc.*, 493 Fed. Appx. 289, 292 (3d Cir. June 28, 2012))); *Boykins v. SEPTA*, 722 F. App'x 148, 155 (3d Cir. 2018) (affirming grant of summary judgment where "no evidence in the record suggesting [employment decision] was influenced by prejudice and 'belief alone is insufficient to raise an issue of material fact.'" (quoting *Bray v. Marriott Hotels*, 110 F.3d 986, 996 (3d Cir. 1997))); *Lexington Ins. Co. v. W. Pennsylvania Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (quoting *Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 932 (7th Cir. 1995))).

Plaintiff fails to show that discriminatory animus motivated or was any way involved in Port Authority's decision not to promote Plaintiff. *See Fuentes*, 32 F.3d at 765 ("To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."). Here, there is no evidence of discriminatory animus.

For the first time in her opposition brief, five years after the commencement of this litigation and after the close of discovery, Plaintiff advances a disparate impact claim and argues that Port Authority's policy was not neutral, and thus impacted officers with disabilities more than

those without. (Pl. Opp'n at 13.) As such, according to Plaintiff, this so-called neutral policy was not, in fact neutral and violated the ADA. (*Id.*)

As the Supreme Court has explained, "disparate-impact claims 'involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.'" *Raytheon Co.*, 540 U.S. at 52 (quoting *Teamsters v. United States*, 431 U.S. 324, 335, n.15 (1977)). This claim is markedly different from that put forward by Plaintiff in her complaint—one of disparate treatment—which involves "an employer treat[ing] some people less favorably than others because of their race, color, religion, sex, or [other protected characteristic]." *Raytheon Co.*, 540 U.S. at 52 (quoting *Teamsters*, 431 U.S. at 335, n.15). In a disparate impact case, a plaintiff may challenge a "facially neutral employment practice . . . without evidence of the employer's subjective intent to discriminate that is required in a 'disparate-treatment' case." *Raytheon*, 520 U.S. at 52–53 (citations and internal quotation marks omitted). While it is true that a disparate impact claim is cognizable under the ADA, *see id.*, Plaintiff's claim fails.

First, Plaintiff advances this theory for the first time in her opposition brief to Defendant's Summary Judgment Motion. In her Complaint and EEOC Charge, Plaintiff alleges that she was treated differently because of her disability. (*See generally*, Compl.; ECF No. 54-22, Ex. R.) Plaintiff makes no allegations regarding Port Authority's promotional policy as a whole. Thus, it is clear that Plaintiff was not advancing a theory of disparate impact. Nor did Plaintiff move to file an amended pleading. In fact, Plaintiff was granted leave to file an amended complaint, (*see* ECF No. 47), but chose not to do so.

Plaintiff may not advance a novel disparate impact claim on summary judgment. *See Summy-Long v. Pennsylvania State Univ.*, 715 F. App'x 179, 182 (3d Cir. 2017) (explaining that

the Third Circuit affirms "decisions made by district courts rejecting disparate impact claims that were raised for the first time in summary judgment, expressing concerns over potential prejudice, expansion of burdens, and delay"); *Spence v. City of Philadelphia*, 147 F. App'x 289, 292 (3d Cir. 2005) (affirming grant of summary judgment on disparate impact claim where plaintiff did not move to amend complaint, did not include the claim in complaint, and failed to give defendant notice of new claim, and as such, "was precluded from raising the disparate impact claim for the first time at the summary judgment phase"); *Fulton-Walker v. Se. Pennsylvania Transportation Auth.*, No. 22-224, 2023 WL 1864865, at *1 (E.D. Pa. Feb. 9, 2023) (declining to consider disparate impact claims "raised, for the first time . . . in [plaintiffs'] brief in opposition to defendant's motion for summary judgment"). For this reason alone, the Court grants summary judgment to Defendant on Plaintiff's disparate impact claim.

Notwithstanding, even if the Court permitted Plaintiff to proffer a disparate impact claim at this stage in the proceeding, Plaintiff's claim still fails. "[T]o establish a *prima facie* case of disparate impact discrimination, the plaintiff must demonstrate that application of a facially neutral standard has caused a 'significantly discriminatory [] pattern.'" *Newark Branch, N.A.A.C.P. v. City of Bayonne, N.J.*, 134 F.3d 113, 121 (3d Cir. 1998) (quoting *Newark Branch, NAACP v. Town of Harrison,* 940 F.2d 792, 798 (3d Cir.1991)). Typically, a plaintiff must demonstrate such patterns through "statistical disparities." *City of Bayonne*, 134 F.3d at 121. "A comparison between the [] composition of those qualified persons in the relevant labor market and that of those in the jobs at issue typically 'forms the proper basis for the initial inquiry in a disparate impact case.'" *Meditz v. City of Newark*, 658 F.3d 364, 370 (3d Cir. 2011) (quoting *N.A.A.C.P. v. Harrison*, 940 F.2d 792, 798 (3d Cir.1991)).

In the case at bar, Plaintiff proffers no evidence, nor is there any in the record, regarding the impact of Port Authority's neutral promotional process on officers with disabilities. Nor does it appear that Plaintiff attempted to offer any statistics or other evidence regarding the number of officers with disabilities who did or did not receive promotions. As such, on the merits, the Court grants Defendant summary judgment on Plaintiff's disparate impact claim.

Therefore, the Court concludes that even if Plaintiff had met her burden at Step One to establish that a *prima facie* case of discrimination, Defendant has offered a nondiscriminatory reason for the decision not to promote Plaintiff that Plaintiff has failed to show was pretext. Summary judgment will be granted for Defendant on Plaintiff's ADA claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**, and judgment for Port Authority and Michael Fedorko will be entered.[9] An appropriate Order will accompany this Opinion.

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: June 26, 2024

---

[9] Plaintiff also brought suit against Fedorko, who Plaintiff alleges was Superintendent of the Port Authority Police Department. (*See* Compl. ¶ 16.) Fedorko moved to dismiss Plaintiff's claims, and the Honorable Michael A. Shipp, U.S.D.J,, in his March 8, 2022 Memorandum Opinion and Order, (ECF Nos. 46 and 47), held that Plaintiff's claims against Fedorko could proceed only to the extent Plaintiff seeks prospective injunctive relief. (*See* ECF No. 46 at 6.) Of note, Judge Shipp found Plaintiff's Complaint alleged "some prospective relief" such as "ongoing violations of the ADA and continuing to fail to promote Otero to Sergeant." (*See id.* at 5.) Judge Shipp dismissed Plaintiff's Complaint against Fedorko to the extent it sought retrospective relief against Fedorko. (ECF No. 47.) As Plaintiff retired from Port Authority in April 2021, (SOF ¶ 10), Plaintiff can no longer seek prospective relief, as the Court cannot enjoin any future action related to her employment with Port Authority because she no longer works there. Therefore, the Court dismisses any claims against Fedorko as moot. *See Mollett v. Leicth*, 511 F. App'x 172, 174 (3d Cir. 2013) (affirming dismissal of claims as moot where district court was "unable to grant the relief sought").